# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
*Northern Division*

| | |
|---|---|
| SUNBELT RENTALS, INC., | * |
| Plaintiff, | * |
| v. | * Case No.: DLB-18-3134 |
| VERTICON CONSTRUCTION, INC., | * |
| Defendant. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Sunbelt Rentals, Inc. ("Sunbelt") initiated this litigation after Verticon, Inc. ("Verticon") failed to pay for construction equipment that it rented from Sunbelt. Compl., ECF No. 1. In its Complaint, it sought $152,165.22 from Verticon for breach of contract. *Id.* It moved for partial summary judgment in the amount of $142,410.16, arguing that the lesser sum was undisputed. Pl.'s Mot., ECF No. 31; Pl.'s Mem. 4, 6, ECF No. 32.[1] The parties then asked the Court to defer resolution of the motion, ECF No. 39, and they entered into an agreement ("Settlement Agreement") to settle the claim for $135,920.92, with payments to come from Verticon and three sureties, Sett. Agr., ECF No. 54-1. Two months later, after receiving only $68,952.92, Sunbelt renewed its dispositive motion, stating that it still sought $73,457.24, the unpaid balance of the $142,410.16 it originally sought on summary judgment. Pl.'s Supp., ECF No. 53. Verticon concedes that payments under the Settlement Agreement are incomplete. Def.'s Resp., ECF No. 54. But in its view, the Court should not enter

---

[1] Sunbelt voluntarily dismissed its claim against Aegis Security Insurance Co. ("Aegis"), ECF No. 53, leaving only the claim against Verticon.

judgment against it; rather, the Court should enforce the Settlement Agreement, obligating Verticon to pay the remainder of the $135,920.92 it agreed to pay in settlement of the case (that is, $6,489.24 less than Sunbelt seeks). *Id.* In its response, Verticon asked for an extension of time to complete its payments. *Id.*

I construed Verticon's request as a motion to enforce the Settlement Agreement. ECF No. 58. The parties fully briefed Sunbelt's motion for partial summary judgment and Verticon's motion to enforce the Settlement Agreement. ECF Nos. 31, 32, 53, 54, 57, 59. A hearing is not necessary. *See* Loc. R. 105.6. Because Verticon has neither performed all of its material contractual obligations nor shown that its performance should be excused, it cannot enforce the Settlement Agreement. *See Hubler Rentals, Inc. v. Roadway Exp., Inc.,* 637 F.2d 257, 260–61 (4th Cir. 1981). Further, Sunbelt is entitled to judgment as a matter of law because the material facts are undisputed. Therefore, I will grant Sunbelt's motion for partial summary judgment and enter judgment in Sunbelt's favor for the unpaid balance of the $142,410.16 it originally sought on summary judgment.

## **Factual Background**

Pursuant to the Settlement Agreement, Verticon agreed to pay Sunbelt $135,920.92 "in full on [or] before June 30, 2019, time being of the essence." Sett. Agr. ¶ 1. Three sureties were expected to make payments toward this total, with Fidelity & Deposit Co. of Maryland/Cooper Material Handling Co. ("Cooper") paying $66,968.00; FCCI Insurance Co. ("FCCI") paying $48,348.34; and Aegis Security Insurance Co. ("Aegis") paying $5,604.58. *Id.* ¶ 2. Verticon was responsible for securing these payments and paying $15,000.00 itself. *Id.* ¶¶ 1–2. In exchange for "timely payment in full," Sunbelt agreed to dismiss all of its claims in this litigation with prejudice. *Id.* ¶ 2.

Sunbelt received $15,000.00 from Verticon, $48,348.34 from FCCI, and $5,604.58 from Aegis before the June 30, 2019 deadline. Checks, ECF No. 54-1, at 3, 6, 9. To secure payment from Cooper

2

in satisfaction of the Settlement Agreement, the parties extended the deadline repeatedly, first to July 8, 2019, then to July 15, 2019, and then to July 22, 2019, ECF Nos. 45–50. Yet, as of August 8, 2019, Sunbelt still had not received Cooper's payment. Pl.'s Supp. 1. The parties did not agree to extend the deadline beyond July 22, 2019, and therefore Verticon's timely payment totaled only $68,952.92, or just over half of the $135,920.92 due.

On August 22, 2019, Verticon asked the Court for "an additional fifteen (15) days to tender the remaining payments to Sunbelt." Def.'s Resp. ¶ 7. According to Verticon, Cooper had "rescinded its agreement to make the payment," and Verticon had "been negotiating a resolution to this dispute within a dispute" with Cooper. *Id.* ¶¶ 4–5. Verticon and Cooper "reached a compromise" on August 22, 2019, under which Cooper would "issue a payment for $35,000 to be tendered to Sunbelt Rentals, Inc." *Id.* ¶ 5. Notably, if Cooper remitted a payment of $35,000.00 to Sunbelt, Verticon still would be responsible for the remaining $31,968.00 due under the Settlement Agreement. *See* Sett. Agr. ¶ 2.

The Court did not address the request for additional time, and Verticon did not complete its payments due under the Settlement Agreement within fifteen days of its August 22, 2019 request. Indeed, it is unclear whether Sunbelt ever received the $35,000.00 payment from Cooper following the August "compromise." *See* Status Rept., ECF No. 56; Pl.'s Reply & Opp'n, ECF No. 57; Def.'s Reply, ECF No. 59. On October 18, 2019, almost two months after Cooper was supposed to have paid $35,000.00, Sunbelt reported that Verticon was "scheduled to receive a sign off on the final punch list October 22, 2019, which [would] trigger Cooper Materials to release to Sunbelt an *additional* $35,000." Status Rept. (emphasis added). The status report did not state whether Cooper already had made a payment to Sunbelt, or whether the anticipated payment was simply "additional" to the payments Sunbelt had received from the other sureties and Verticon. I directed Verticon to address its authority to enforce the Settlement Agreement and to notify the Court of the amount paid to Sunbelt to date. Ltr. Order, ECF No. 58.

In its November 13, 2019 reply, Verticon stated that it had "been attempting to conclude a newly arisen punch list in order to get its prime contractor to release additional funds to Sunbelt" and that when Verticon "finish[ed] the punch list on Thursday, November 14, 2019, . . . Cooper Materials will authorize *another* check for $35,000 directly to Sunbelt." Def.'s Reply ¶¶ 2–3 (emphasis added). As noted, Sunbelt's October 18, 2019 status report similarly referenced an "additional $35,000" it expected Cooper to pay. It is unclear to the Court from either filing whether Cooper had remitted an earlier payment of $35,000.00 pursuant to the August 22, 2019 compromise, or whether Sunbelt only had received other checks from the other sureties and Verticon. Of course, if Cooper had submitted two $35,000.00 checks, then Sunbelt would have received almost $2,032.00 more than was due under the Settlement Agreement, which is highly unlikely. Regardless, it is clear that Sunbelt received only a little more than half of the amount due by the July 22, 2019 deadline and, more than four months later, it still has not received the entirety of the $73,457.24 it seeks in its summary judgment motion, as supplemented. Pl.'s Supp.

## Motion to Enforce Settlement Agreement

Verticon asks the Court to enforce the Settlement Agreement instead of entering judgment against it, so that it will have to pay the remainder of the $135,920.92 due under the Settlement Agreement, but not the remainder of the greater amount Sunbelt seeks in its motion for partial summary judgment. Def.'s Resp. ¶ 8. Sunbelt counters that Verticon, as the defaulting party, cannot ask the Court to enforce the Settlement Agreement. Pl.'s Reply & Opp'n 2. Verticon insists that it can, given that "Ageis, FCCI, and Verticon all made their proportionate payments under the agreement" and Verticon has diligently sought to spur its co-payor into action and has been attempting to conclude a newly arisen punch list in order to get its prime contractor to release additional funds to Sunbelt." Def.'s Reply ¶¶ 1, 2; *see id.* ¶ 4 ("Verticon has not ignored the balance, but instead has worked diligently to acquire the funds from the appropriate parties.").

4

When the parties to litigation in federal court reach an agreement to settle the case, the district court has "inherent authority, deriving from [its] equity power, to enforce [the] settlement agreement[]," and it may do so on a motion to enforce the settlement agreement filed in the underlying litigation. *Hensley v. Alcon Labs, Inc.*, 277 F.3d 535, 540 (4th Cir. 2002); *see Smith v. Montgomery Cty., Md.*, No. PWG-17-3122, 2019 WL 1130156, at *3 (D. Md. Mar. 12, 2019). A motion to enforce a settlement agreement is tantamount to "an action for specific performance of a contract." *Amaya Diaz v. Pho Eatery, Inc.*, No. DKC-17-2968, 2019 WL 5102696, at *1 (D. Md. Oct. 11, 2019) (quoting *United States ex rel. McDermitt, Inc. v. Centex-Simpson Constr. Co.*, 34 F. Supp. 2d 397, 399 (N.D. W. Va. 1999), *aff'd sub nom. United States v. Centex-Simpson Constr.*, 203 F.3d 824 (4th Cir. 2000)). Thus, "to enforce the settlement agreement, the court must 1) find that the parties reached a complete agreement and 2) must be able to determine that agreement's terms and conditions." *Id.* (citing *Hensley*, 277 F.3d at 540–41). Under Maryland law,[2] the court applies "the same general rules of construction that apply to other contracts." *Trs. of Iron Workers Local Union No. 5 & Iron Workers Employers Ass'n, Employee Pension Tr. v. Moxy Misc. Metals, LLC*, No. PWG-17-3285, 2019 WL 4536514, at *1 (D. Md. Sept. 19, 2019) (quoting *Maslow v. Vanguri*, 896 A.2d 408, 419 (Md. Ct. Spec. App. 2006)). Accordingly, there must be offer, acceptance, and mutual consideration for an agreement to exist. *Id.* (citing *CTI/DC, Inc. v.*

---

[2] For contractual disputes, this Court applies the choice-of-law rules of Maryland, the forum state. *See Baker DC, LLC v. Baggette Constr., Inc.*, 378 F. Supp. 3d 399, 406 (D. Md. 2019). Maryland typically "follows the doctrine of *lex loci contractus*, applying the substantive law of the place where the contract was formed." *Id.* (quoting *RaceRedi Motorsports, LLC v. Dart Mach., Ltd.*, 640 F. Supp. 2d 660, 665 (D. Md. 2009)). Here, the Settlement Agreement does not state where it formed, and the parties have not stated "where the last act necessary to make the contract binding occur[red]." *See id.* (quoting *Montage Furniture Servs., LLC v. Regency Furniture, Inc.*, 966 F. Supp. 2d 519, 523 (D. Md. 2013)). But, the underlying activity in this case occurred in Maryland, Compl. ¶¶ 7–12, Verticon is incorporated in Maryland and its principal place of business is located in Maryland, *id.* ¶ 3, and all counsel are in Maryland. Sunbelt is in North Carolina, *id.* ¶ 2, but North Carolina contract law is the same as Maryland's in all material respects. *See Richter Cornbrooks Gribble, Inc. v. BBH Design, P.A.*, No. WDQ-09-1711, 2010 WL 3470055, at *3 (D. Md. Sept. 2, 2010) ("[T]he substantive law of Maryland governing breach of contract . . . does not materially differ from that of North Carolina . . . ."). Therefore, I will apply Maryland law. *See Baker DC*, 378 F. Supp. 3d at 406.

5

*Selective Ins. Co. of Am.*, 392 F.3d 114, 123 (4th Cir. 2004) (elements of contract under Maryland law)). Provided that there is no "substantial factual dispute over either the agreement's existence or its terms," the court does not need to hold an evidentiary hearing. *Id.* (quoting *Swift v. Frontier Airlines, Inc.*, 636 F. App'x 153, 156 (4th Cir. 2016)); *see also* Loc. R. 105.6.

Significantly, the party seeking to enforce the agreement "must first prove his own performance, or an excuse for nonperformance, in order to recover for any breach by the opposing party." *Hubler Rentals, Inc. v. Roadway Exp., Inc.*, 637 F.2d 257, 260–61 (4th Cir. 1981) (discussing Maryland law); *see also Collins/Snoops Assocs., Inc. v. CJF, LLC*, 988 A.2d 49, 57 (Md. Ct. Spec. App. 2010) ("On a claim for breach of contract, the plaintiff (or counterplaintiff) asserting the claim for damages bears the burden of proving all elements of the cause of action, including plaintiff's own performance of all material contractual obligations.").[3] Thus, the issue is whether Verticon's partial payment qualified as performance of all of its material obligations under the contract or, if not, whether its nonperformance should be excused.

"[A] breach of contract will be deemed material if it affects the purpose of the contract in an important or vital way." *Sachs v. Regal Sav. Bank*, 705 A.2d 1, 4 (Md. Ct. Spec. App. 1998), *aff'd sub nom. Regal Sav. Bank, FSB v. Sachs*, 722 A.2d 377 (Md. 1999). Generally, "[w]hether a breach is considered material is a question of fact" for the fact-finder. *Publish Am., LLP v. Stern*, 84 A.3d 237, 249 (Md. Ct. Spec. App. 2014). But, if "the question is 'so clear that a decision can properly be given only one

---

[3] When asserting that "[a] party who breaches a contract has no right to enforce it," Sunbelt relied on *Bank of America, N.A. v. Jill P. Mitchell Living Trust*, 822 F. Supp. 2d 505 (D. Md. 2011), and *Roanoke Properties Ltd. Partnership v. Dewberry & Davis*, 30 F. App'x 121, 124 (4th Cir. 2002). Pl.'s Reply & Opp'n 2. Verticon argues that *Bank of America*, 822 F. Supp. 2d 505 "is persuasive [but] it is not binding precedent." Def.'s Reply ¶ 4. This is true, given that this Court applied Utah law in *Bank of America*. Similarly, in *Roanoke Properties*, 30 F. App'x 121, the Fourth Circuit applied Virginia law. Nevertheless, Maryland law, which I am applying in this case, is similar. *See Hubler Rentals*, 637 F.2d at 260–61; *Collins/Snoops Assocs.*, 988 A.2d at 57.

way,'" then "'the court may properly decide the matter as if it were a question of law.'" *Id.* (quoting *Speed v. Bailey*, 139 A. 534 (Md. 1927)). For example, "[a] contractual requirement that is 'of the essence' means that it is 'so important that if the requirement is not met, the promisor will be held to have breached the contract and a rescission by the promisee will be justified.'" *Md. Land Consulting, LLC v. Loyal Order of Moose #1456*, No. 1175, Sept. Term 2016, 2018 WL 4896803, at *3 (Md. Ct. Spec. App. Oct. 9, 2018) (quoting *Time-is-of-the-Essence Clause*, Black's Law Dictionary (10th ed. 2014)).

Here, the parties entered into the Settlement Agreement to resolve the claims that Sunbelt asserted in this case, with Verticon agreeing to ensure payment to Sunbelt of $135,920.92 "in full on or before June 30, 2019, *time being of the essence*," and Sunbelt accepting that payment "in full and complete satisfaction of the claims" and then dismissing with prejudice all claims in its Complaint. Sett. Agr. ¶¶ 1–2 (emphasis added). The deadline for payment, as amended, was July 22, 2019. Yet, by that date, Verticon had paid only $68,952.92, or just over half of the $135,920.92 due. It is not clear that Verticon has paid any portion of the remaining $66,968.00; even if it did pay the $35,000.00 that Cooper agreed to remit in August 2019, $31,968.00 remained outstanding as of the parties' latest filing on November 13, 2019. Consequently, Verticon did not meet its obligation to pay the full amount due by the contractual deadline. In light of the contractual language that time was "of the essence," there can be no genuine dispute that the failure to pay the full amount due by the deadline was material. *See Sachs*, 705 A.2d at 4; *Md. Land Consulting*, 2018 WL 4896803, at *3. Therefore, on the record before me, Verticon did not perform all of its material obligations. *See Sachs*, 705 A.2d at 4; *Md. Land Consulting*, 2018 WL 4896803, at *3.

Verticon argues that its nonperformance should be excused because "Ageis, FCCI, and Verticon all made their proportionate payments under the agreement," and "Verticon has diligently sought to spur its co-payor into action and has been attempting to conclude a newly arisen punch list in order to get its prime contractor to release additional funds to Sunbelt." Def.'s Reply ¶¶ 1, 2; *see id.*

7

¶ 4 ("Verticon has not ignored the balance, but instead has worked diligently to acquire the funds from the appropriate parties."). But the Settlement Agreement obligated Verticon to ensure that Sunbelt received the full $135,920.92 due. Sett. Agr. ¶¶ 1–2. Notably, in August 2019, when Cooper agreed to pay $35,000.00, instead of the $66,968.00 it owed, Verticon did not remit the remainder of the amount due to Sunbelt at that time. Nor has Verticon paid the balance in the months that have passed since August. Certainly, one party's performance typically is excused when the other party materially breached the agreement. *E.g.*, *Weichert Co. v. Faust*, 19 A.3d 393, 403 (Md. 2011) ("[T]here is no proven material breach in this case . . . to excuse the performance of the employer under the contract."); *Barufaldi v. Ocean City, Chamber of Commerce, Inc.*, 7 A.3d 643, 658 (Md. Ct. Spec. App. 2010) ("Because the Chamber committed a material breach of the Agreement, Barufaldi was excused from performance . . . ."). And, "[u]nder the prevention doctrine, a general contractor that materially contributes to the failure of a condition precedent under the contract may not rely on the absence of the condition precedent as a defense in a breach of contract action." *Young Elec. Contractors, Inc. v. Dustin Constr., Inc.*, 185 A.3d 170, 190 (Md. 2018) (citing *Aarow Equipment & Servs., Inc. v. Travelers Cas. & Surety Co.*, 417 F. App'x 366, 372 (4th Cir. 2011)). But, Sunbelt has not breached the Settlement Agreement or prevented Verticon from fulfilling its obligations under the Settlement Agreement. Under the circumstances presented on the record before me, Verticon has not shown that its nonperformance should be excused. *See Hubler Rentals*, 637 F.2d at 260–61 (noting that burden is on "party suing on the contract [to] prove . . . an excuse for nonperformance"). Consequently, Verticon cannot enforce the Settlement Agreement. *See id.*; *Collins/Snoops Assocs.*, 988 A.2d at 57.

## Motion for Partial Summary Judgment

Summary judgment is appropriate when the moving party establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To meet its burden, the party must identify "particular parts of materials in the record,

including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials" in support of its position. Fed. R. Civ. P. 56(c)(1)(A). Then, "[t]o avoid summary judgment, the opposing party must set forth specific facts showing that there is a genuine issue for trial." *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 205 (4th Cir. 2019) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The opposing party must identify more than a "scintilla of evidence" in support of its position to defeat the motion for summary judgment. *Anderson*, 477 U.S. at 251. Although "a court should not weigh the evidence," *Perkins*, 936 F.3d at 205 (quoting *Anderson*, 477 U.S. at 249), if "a party fails to establish the existence of an element essential to that party's case" or "'the record taken as a whole could not lead a rational trier of fact to find for the non-moving party,'" then summary judgment is proper, *id.* (quoting *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23. In ruling on a motion for summary judgment, this Court "view[s] the facts and inferences drawn from the facts in the light most favorable to . . . the nonmoving party." *Perkins*, 936 F.3d at 205 (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 958 (4th Cir. 1996)).

Here, Sunbelt's one claim against Verticon is for breach of contract. Compl. ¶¶ 13–15. "To prevail in an action for breach of contract, a plaintiff must prove that the defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation." *Taylor v. NationsBank, N.A.*, 776 A.2d 645, 651 (Md. 2001). Sunbelt believes that Verticon owes it $152,165.22; Verticon disputes $9,755.06 of this total but "admits that it owes the remaining balance." Verticon's Answers to Interrogs., Interrog. Nos. 2 (disputed charges), 5 (admitting obligation to pay remainder), ECF No. 32-4; Patterson Aff. ¶¶ 10–11, ECF No. 33; Rental Agrs., ECF No. 32-1; Stmt., ECF No. 32-3. Thus, it is undisputed that Verticon was contractually obligated to pay Sunbelt $142,410.16 for equipment that it leased from Sunbelt and, when Sunbelt initially moved for summary judgment, Verticon had breached its obligation to pay that amount. Pl.'s Mem. 3–4; Verticon's Answers to Interrogs., Interrog.

9

Nos. 2 & 5; Patterson Aff. ¶¶ 10–11. It also is undisputed that Sunbelt has received $68,952.92 in partial satisfaction of the amount due. Pl.'s Supp.; Def.'s Reply ¶ 1. Additionally, regardless what payment(s) Sunbelt received from Cooper, it is undisputed that Sunbelt has not received the entirety of the $73,457.24 Sunbelt still owed as of August 8, 2019. *See* Def.'s Reply. Accordingly, Sunbelt is entitled to judgment in its favor for $73,457.24, less any additional amount(s) paid to date. The parties shall submit a joint status report that identifies the amounts of all payments made to date toward the $73,457.24 balance that remained on August 8, 2019.

## **Conclusion**

In sum, Verticon's motion to enforce the Settlement Agreement, ECF No. 54, is denied, and Sunbelt's motion for partial summary judgment, ECF Nos. 31, 53, is granted. By December 12, 2019, the parties shall submit a joint status report that identifies the amounts of all payments made to date toward the $73,457.24 balance that remained on August 8, 2019. I then will enter judgment in Sunbelt's favor on the balance.

A separate Order shall issue.

Date: <u>December 5, 2019</u>　　　　　　　　　　　　　　　　　　　/S/　　　　　　　
　　　　　　　　　　　　　　　　　　　　　　　　　　　　Deborah L. Boardman
　　　　　　　　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge

lyb